IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| SANTORI LITTLE, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 3:23-cv-44-RAH |
| | ) [WO] |
| THE CITY OF VALLEY, ALABAMA, *et al.*, | ) |
| Defendants. | ) |

# **MEMORANDUM OPINION AND ORDER**

## INTRODUCTION

Trash stinks. In this putative class action, Plaintiffs Santori Little, Charles Gray, and Tamara Khelifa claim that they and other area residents were criminally charged with misdemeanors and jailed by the City of Valley, Alabama for failing to pay their monthly garbage bills. They also claim that the City's garbage revenue structure constitutes an illegal tax. They now sue the City of Valley, Alabama and AmWaste, LLC for violating and conspiring to violate their constitutional rights, racketeering and extortion, and unjust enrichment. Defendants each move to dismiss the claims against them. The issues are fully briefed and ripe for review. Although the Court is extremely troubled by the City's practices, the Court nevertheless concludes Defendants' motions to dismiss are due to be granted and the Second Amended Complaint (SAC) dismissed.

1

## JURISDICTION AND VENUE

The Court has jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367. The parties do not contest personal jurisdiction, nor do they dispute that venue is proper in the Middle District of Alabama. The Court finds adequate allegations to support the propriety of both jurisdiction and venue.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task

that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. But if the facts in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief,'" and the complaint must be dismissed. *Id.* (alteration adopted) (citing Fed. R. Civ. P. 8(a)(2)).

**FACTUAL ALLEGATIONS**

According to the SAC, the City initiated criminal misdemeanor proceedings in the District Court of Chambers County, Alabama against Little, Gray, and Khelifa for violating Alabama Code § 22-27-3 and/or § 22-27-5 of the Alabama Solid Wastes and Recyclable Materials Management Act after each of them failed to pay their garbage bills with the City. All three of them were arrested, jailed, and ordered to pay costs, fees, and restitution.[1]

Little was first charged with committing the state-law misdemeanor offense and was arrested in 2011. She was arrested and jailed again in 2013. As to the 2013 charge, she posted a $2,500 appearance bond and was released from jail. On August

---

[1] Alabama Code § 22-27-1 *et seq*. (The Solid Wastes and Recyclable Materials Management Act) sets forth the state law concerning solid waste (or garbage) collection and services in Alabama. Section 22-27-7 in particular makes it a criminal misdemeanor for a resident to violate the Act, including the nonpayment by a resident of a municipal garbage bill. Section 22-27-5(e) also gives the collection authority (here, a municipality) the right to suspend service and file a civil action for nonpayment. The City's municipal code (Valley, Ala. Mun. Code § 58-127) adopts the state statute and provides a similar sanctions scheme, including the creation of a criminal misdemeanor violation, suspension of service, and a civil suit.

3

14, 2013, Little appeared in district court, pleaded guilty to the violation, and was ordered to pay $119.50 in restitution to the City, together with a $25.00 bond fee. She later received show cause orders in September and November 2021, May 2022, and January 2023, ordering her to appear in district court to answer for failing to pay her garbage bills to the City again.

Gray suffered a similar fate. He did not pay his garbage bill in late 2021, and after the City initiated criminal misdemeanor proceedings against him in state district court, he was arrested and jailed on January 14, 2022. He too posted a $2,500 appearance bond and was released from jail. On March 9, 2022, Gray appeared in district court, pleaded guilty to the violation, and was ordered to pay $219.00 in costs, a $25.00 bond fee, and $104.92 in restitution to the City.

Khelifa too. She did not pay her garbage bills, and on or about November 30, 2022, she was arrested and jailed. She also posted a $2,500 appearance bond and was released from jail. She later appeared in district court, pleaded guilty to the violation, and was ordered to pay a bail fee and her past due garbage bill.

As the Plaintiffs' circumstances reveal, the City's garbage fee collection practices have been in place for well over a decade. As to those practices, the City handled the billing and monetary collection side, but it contracted with outside, private companies to handle garbage collection. Sometime in 2019, the City contracted with AmWaste to collect its residents' garbage. AmWaste did not handle

billing or the collection of money for its services. The City did. In their SAC, Plaintiffs allege that AmWaste knew about the City's fee practices, including the jailing of residents for nonpayment of fees, before and after it contracted with the City, and that AmWaste conspired with the City to use threats of jail time to intimidate residents into paying their fees.

As to the overall revenue structure, according to the Plaintiffs, the City collects more in revenue than the actual costs of garbage collection and remits those excess funds into the City's general fund. As such, the revenue structure constitutes an illegal tax under Alabama law.

Plaintiffs bring five counts in the SAC, including three under 42 U.S.C. § 1983: (1) violation of the Due Process Clause of the Fourteenth Amendment (Count I), against the City only; (2) violation of the Eighth Amendment (Count IV), against the City only; and (3) conspiracy to violate Plaintiffs' constitutional rights (Count II), against both the City and AmWaste. Count III alleges a claim under the Racketeering Influenced and Corrupt Organization Act (RICO) against the City and AmWaste, and Count V is a state law claim of unjust enrichment against the City only.

## DISCUSSION

Defendants each move to dismiss all claims against them. The Court will address the City's and AmWaste's motions to dismiss together and will first consider

the § 1983 claims, followed by the RICO claim, and then the state law unjust enrichment claim.

### A. § 1983 Claims

The City argues nearly a dozen reasons why Plaintiffs' three § 1983 claims should be dismissed. Because the City's *Monell* and related causation argument, as applied by the Eleventh Circuit in *Teagan v. City of McDonough*, 949 F.3d 670, 675 (11th Cir. 2020) (per curiam)[2], is dispositive, the Court will dismiss Plaintiffs' § 1983 claims on *Monell* and causation grounds and will not address the City's remaining arguments for dismissal.

To establish § 1983 liability against the City for a violation of the Eighth and Fourteenth Amendments, Plaintiffs must show (1) their constitutional rights were violated; (2) the City had a custom or policy constituting deliberate indifference to those constitutional rights; and (3) the City's policy or custom caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978))). The custom or policy must be "the moving force of the constitutional violation," *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citing *Monell*, 436 U.S. at 694), and the "factual and proximate cause" of Plaintiffs' injuries, *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).

---

[2] Although *Teagan* involved the Georgia court system, the principles are equally applicable here.

6

The causal link between the City's actions and the deprivation of federal rights must be "direct." *Id.*

The threshold question here, one Plaintiffs fail to pass, is whether Plaintiffs have shown "that the local government entity . . . has authority and responsibility of the governmental function at issue[.]" *Teagan*, 949 F.3d at 675 (quoting *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1330 (11th Cir. 2003) (en banc)). The governmental functions Plaintiffs put at issue in the SAC are their actual arrests, jailing, and judicial orders to pay fees, costs, and restitution, as well as the City's "continuing to [] threaten [residents] with imprisonment for failure to pay" garbage bills because of "this process." (Doc. 31 at 5, 11.) As they allege, the City "prosecutes and jails people to intimidate them into paying garbage bills." (*Id.* at 5.) And, in "this country and State, we do not have debtors' prison[s]. The law is clear that jail time for debts is not an option. Section 20 of the Alabama Constitution says quite simply, 'That no person shall be imprisoned for debt.' Ala. Const. §20." (*Id.* at 7.) "Not only may one not actually be imprisoned for the non-payment of a debt, but 'The Alabama Supreme Court has condemned the use of threat of prosecution as a means of collecting debt.' *Bullen v. State*, 518 So. 2d 227, 233 (Ala. Crim. App. 1987)." (*Id.* at 8.) In sum, "Not only did the City actually imprison Plaintiffs for the failure to pay a debt, but it continues to use the threat of imprisonment as a means to collect debts." (Doc. 31 at 8.)

To succeed, Plaintiffs must show the City had the authority and responsibility to take the actions they claim violated their federal rights and, if attributable to the district court, whether the district court acted on behalf of the City when it decided to take those actions—regardless of whether those actions were the sole result of Plaintiffs' failure to pay garbage bills or, as the City contends, Plaintiffs' failure to appear in court. If Plaintiffs do not make such a showing, the City is not liable under § 1983. *Teagan*, 949 F.3d at 675 (citing *McMillian v. Johnson*, 88 F.3d 1573, 1578 (11th Cir. 1996) ("A threshold question . . . is whether the official is going about the local government's business. If the official's actions do not fall within an area of the local government's business, then the official's actions are not acts of the local government."), *aff'd sub nom. McMillian v. Monroe Cnty.*, 520 U.S. 781 (1997)).

The City argues that because the judicial proceedings against Plaintiffs occurred in the District Court of Chambers County, Alabama (a state court), where a state district court judge presided over a state misdemeanor offense, and not an appointed and paid for municipal court judge presiding over a municipal offense, the state court was acting on state business under state authority, not local business under municipal authority. And the City further contends the necessary chain of causation was broken as a matter of law because the state district court exercised its own independent state authority to preside over misdemeanor actions and to issue arrest

warrants, jail each of the Plaintiffs, and issue orders regarding costs, fees and restitution as it deemed appropriate.

In support of its motion dismiss, the City submitted the relevant court case files, including the dockets, for each of the Plaintiffs (Docs. 35-1, 35-2, 35-3), and the Court takes judicial notice of them. *See McCone v. Thorpe*, 828 F. App'x 697, 698 (11th Cir. 2020) (per curiam) (citing Fed. R. Evid. 201(b); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278–80 (11th Cir. 1999)). The criminal misdemeanor complaint against each of the Plaintiffs reveals that they were each charged with violating a state statute (Alabama Code § 22-27-3 or § 22-27-5) for failure to pay garbage fees.[3] The dockets also reveal that the cases were filed in state district court and that the district court made the arrest, bonding, fine, fee, and restitution decisions.

The City's primary argument is that it was the state prosecutor and the state district court that made all of the decisions to prosecute, arrest, jail, and order Plaintiffs to pay fees and restitution for each of the Plaintiff's violations of state law, thus the City cannot be liable under *Monell*. Despite the Plaintiffs' vehement contest, the City is right.

---

[3] Nothing in the case files suggests that any Plaintiff was charged with violating any provision of the City's municipal code.

Although debtors' prison cases are not unique to Alabama courts, this case is somewhat different because it involves proceedings prosecuted in state court and presided over by a state district judge while other such cases involved municipal courts presided over by judicial officers funded and appointed by the municipality. *See generally Carter v. City of Montgomery*, 473 F. Supp. 3d 1273, 1285, 1302–03 (M.D. Ala. 2020); *McCullough v. City of Montgomery, Ala.*, No. 2:15-cv-463 (RCL), 2019 WL 2112963 (M.D. Ala. May 14, 2019); *Carden v. Town of Harpersville*, No. 2:15-cv-01381-RDP, 2017 WL 4180858 (N.D. Ala. Sept. 21, 2017); *Ray v. Judicial Corr. Servs., Inc.*, No. 2:12-cv-02819-RDP, 2017 WL 660842 (N.D. Ala. Feb. 17, 2017).  But the distinction is without a difference because even if the criminal cases against Plaintiffs had been initiated in municipal court, the Plaintiffs would still run headfirst into *Monell* because municipal judges are also members of the state unified judicial system who act on behalf of the state when they engage in judicial action applying or enforcing state law.  *See Ray*, 2017 WL 660842, at *11–13.  *See also Teagan*, 949 F.3d at 676–77.  And here, the connection is even more tenuous since the district attorney and state district court are not funded or appointed by the municipality like municipal courts and municipal judges are, nor are they dealing with violations of a municipal ordinance.

Plaintiffs argue the City can be liable because it initiated the causal chain when it filed the criminal misdemeanor charge.  As they allege, "[i]n each instance

10

. . . the process was started with the City [of Valley] making a Complaint for a Code Violation. Pursuant to Alabama statute each of the Plaintiffs herein were arrested and jailed." (Doc. 31 at 4.) But importantly, the Plaintiffs do not allege in the SAC that the City's mere act of initiating the misdemeanor proceedings by filing misdemeanor charges under state law with the state district court pursuant to statutorily authorized authority is itself a constitutional violation or deprivation of rights.[4] And neither do the Plaintiffs challenge the constitutionality of Alabama Code §§ 22-27-3, -5, or -7. In the absence of those allegations or challenges, the Court is left to decide whether the City is liable for the actions the state district court took—that is, the actions the Plaintiffs challenge: arrests, jailing, and the assessment of costs, fees, and restitution.

First, the actions Plaintiffs challenge were state, not municipal, actions and the City had no control over the district court, so they fail the threshold question under *Monell*. *See Teagan*, 949 F.3d at 677–78. The mere act of filing a misdemeanor complaint to initiate criminal proceedings based on a violation of state law does not transform the district court's later actions into a local one for which the City can be liable, at least under the theories of liability currently pleaded in the

---

[4] This assumes the proceedings were initiated by the City, and not the state prosecutor, a point that the City contests. For purposes of the City's motion, the Court will assume that the proceedings were initiated by the City as the Plaintiffs allege in the SAC.

11

SAC.[5] The City filed the misdemeanor complaints pursuant to state law, and then the district court applied and enforced state law in its decisions and actions—arrests, jail, and orders to pay costs, fees, and restitution—in the manner it deemed appropriate. The conduct Plaintiffs find fault with is that specifically attributable to the district court. The City had no control over the decisions or actions of the district court and the district court was not acting as the final policymaker for the City when it applied and enforced the state law here. "[L]ocal governments can never be liable under § 1983 for the acts of those whom the local government has no authority to control." *Turquitt v. Jefferson Cnty., Ala.*, 137 F.3d 1285, 1292 (11th Cir. 1998) (en banc).[6]

Second, even though, as the Plaintiffs allege, the City initiated the causal chain that led to the actions of which the Plaintiffs complain, the state district court's independent decisions broke the chain of causation necessary to impose liability on the City. *See Brown*, 520 U.S. at 404. The Chambers County, Alabama prosecutor (i.e., the district attorney), state magistrate judge, and state district and circuit judges

---

[5] The SAC also references the City's "threat" of jail time against Plaintiffs and Valley residents, but the SAC ties those threats only to the City's initiation of proceedings in and the resulting actions of the state district court.

[6] In fact, the district attorney for Chambers County, Alabama recently announced that his office will not prosecute residents of the City for the nonpayment of unpaid garbage fees, a position that evidences the lack of control or authority the City has over the district court or the county prosecutor. www.wtvm.com/2023/07/21/valleys-trash-laws-changing-following-investigation-into-arrests-nonpayments/.

12

derive their authority from the State of Alabama, not the City, and engage in independent judicial and prosecutorial acts for the purpose of applying or enforcing state law.[7] Ala. Const. 1901, Art. VI, § 139(a); Ala. Code § 12-1-2; Ala. Code § 12-17-251; Ala. Code § 12-17-184. They are not employees nor agents of the City. *See generally, Teagan*, 949 F.3d at 676–77.

Plaintiffs' purported arrests and jailing, and the assessment of fees and costs against them here, are very disturbing. But the Plaintiffs have not plausibly shown in their SAC that the City (1) had authority or control over the governmental functions at issue, (2) had a custom or policy of jailing residents for nonpayment of garbage bills that was the "moving force" of the unconstitutional deprivation of their rights, or (3) that the causal link between any such deprivation and the City's actions was the "direct" factual and proximate cause rather than the independent acts of a state court judge who presided over a state misdemeanor offense. Yes, the City played a role in the initiation of the criminal misdemeanor proceedings against each of the Plaintiffs, but it did so under the authority of *state* law. It was the state prosecutor who prosecuted the cases and the district court, with its independent authority to apply and enforce *state* law, that made the decisions to arrest, jail, bond, and order the payment of costs, fees, and restitution that Plaintiffs challenge. So, Plaintiffs' § 1983 claims fail under *Monell* and *Teagan*.

---

[7] Nothing in the court files suggests the City sought jail time, a bond, bond fees, or costs.

Plaintiffs' § 1983 claims (Counts I, II, and IV) are thus due to be dismissed as against the City. Because it takes two to conspire and because the SAC fails to allege facts sufficient to show "the defendants 'reached an understanding' to violate the plaintiff's constitutional rights," *Worthy v. City of Phenix City*, 930 F.3d 1206, 1224 (11th Cir. 2019) (quoting *Grider v. City of Auburn*, 618 F.3d 1240, 1260 (11th Cir. 2010)), Count II is also due to be dismissed as to AmWaste.

### B. RICO Claim

The Defendants also move to dismiss the RICO claim against them. The Defendants argue the SAC fails to plausibly allege facts supporting all of the necessary RICO elements. They are correct. Plaintiffs spilled much ink to defend their claim but used little to state a plausible one supported by detailed factual allegations.

Plaintiffs bring their RICO claim solely under 18 U.S.C. § 1962(c). Under § 1962(c), it is illegal "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]" 18 U.S.C. § 1962(c). In other words, § 1962(c) prohibits an individual from "participating in the conduct of the affairs of an enterprise engaged in interstate commerce, through a pattern of racketeering activity." *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1066 (11th

Cir. 2017). Thus, in order to establish a federal civil RICO violation under § 1962(c), the Plaintiffs "must satisfy four elements of proof: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Jones v. Childers*, 18 F.3d 899, 900 (11th Cir. 1994) (quoting *Sedima, S..P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

A RICO enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Under RICO, "racketeering activity" includes such predicate acts as extortion under state law and the Hobbs Act. *See* 18 U.S.C. § 1961(1). "A pattern is established by at least two acts of racketeering activity the last which occurred within ten years . . . after the commission of a prior act of racketeering activity." *Lehman v. Lucom*, 727 F.3d 1326, 1330 (11th Cir. 2013) (alteration in original) (quoting *McCaleb v. A.O. Smith Corp.*, 200 F.3d 747, 750 (11th Cir. 2000)). These predicate acts must be related to one another and demonstrate criminal conduct of a continuing nature. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004).

A civil plaintiff must also show injuries that were proximately caused by a violation of that statute. *Bivens Gardens Office Building, Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898, 906 (11th Cir. 1998). To prove proximate causation between a RICO violation and a subsequent injury, a plaintiff must present "some

15

direct relation between the alleged injurious conduct and the alleged injury." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006).

Here, the SAC alleges that there was a "contractual agreement between Valley and AmWaste for AmWaste to generate garbage fees through its garbage collection services, and for the City to collect those fees." (Doc. 31 at 14.) The Plaintiffs go on to allege that this contract constitutes an association-in-fact for RICO purposes and makes them "partners in an enterprise" "to ultimately generate revenues for itself and AmWaste." (*Id.* at 15.) These activities that "the Defendants participate in is extortion under the Hobbs Act, 18 U.S.C. § 1951(b)(2)." (*Id.*)

These general allegations do not plausibly show Defendants participated in the operation or management of an allegedly illegal collection scheme or enterprise through a pattern of racketeering activity, or that the Defendants committed "at least two qualifying predicate acts, each of which must constitute a violation of one of the state or federal laws described in 18 U.S.C. § 1961(1)." *Crawford's Auto Center, Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1158 (11th Cir. 2019) (citing *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290–91 (11th Cir. 2010)). Allegations that one or both Defendants had a business relationship with the putative RICO enterprise or that one or both Defendants provided legitimate services for that enterprise does not suffice. In other words, that AmWaste entered into a legitimate, legal contract with the City to provide a legitimate service—garbage

16

collection—to the City's residents with knowledge of the City's long-time practice of filing state criminal charges under state law against its residents does not, standing alone, state a plausible RICO claim.[8] *See, e.g., Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 728 (7th Cir. 1998) (dismissing RICO claim for insufficient pleading and reasoning that "simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c); instead, the individual must have participated in the operation and management of the enterprise itself"); *accord Parm v. Nat'l Bank of Cal., N.A.*, 242 F. Supp. 3d 1321, 1348 (N.D. Ga. 2017) (dismissing RICO claim for insufficient pleading where a defendant "carried out . . . directives, in accordance with a business relationship" and stating, "[S]imply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject [a defendant] to RICO liability under § 1962(c)." (quoting *Javitch v. Capwill*, 284 F. Supp. 2d 848, 854 (N.D. Ohio 2003))).

Plaintiffs' attempts to recast a contractual relationship as a RICO enterprise are unavailing. Simply put, the SAC fails to state a plausible RICO claim against the Defendants. Count III is thus due to be dismissed.

---

[8] No party argues that the mere collection of garbage is an illicit or illegal enterprise or act or a violation of federal or state law. And they should not, especially since Alabama Code § 22-27-3 explicitly allows municipalities to contract with private entities like AmWaste to provide garbage disposal services.

### C. Unjust Enrichment

The last claim for consideration is the Plaintiffs' state law claim for unjust enrichment premised upon the City's illegal tax scheme. District courts have discretion to decline to exercise supplemental jurisdiction over a state law claim when: "(1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). If, after examining the factors listed in § 1367(c), the district court decides that it has the discretion to decline to exercise jurisdiction, it should consider the traditional rationales for pendent jurisdiction in deciding whether or not to exercise that jurisdiction, including judicial economy, convenience, fairness to the parties, and whether all the claims would be expected to be tried together. "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "Both comity and economy are served when issues of state law are resolved by state courts." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002).

Having concluded that each of the federal claims are due to be dismissed, comity and judicial economy are both served here by declining to needlessly decide a matter of state law. Pursuant to 28 U.S.C. § 1367(c)(3), Count V of the SAC is due to be dismissed without prejudice.

## VI. CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1) Defendant AmWaste, LLC's *Motion to Dismiss Second Amended Complaint* (Doc. 33) is **GRANTED**;

(2) Defendant City of Valley's *Motion to Dismiss Plaintiffs' Second Amended Complaint* (Doc. 34) is **GRANTED;**

(3) Counts I, II, III, and IV of Plaintiffs' Second Amended Complaint (Doc. 31) are **DISMISSED with prejudice** and Count V is **DISMISSED without prejudice**;

(4) The Clerk of Court is **DIRECTED** to close the case.

**DONE** on this the 15th day of December 2023.

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE